To bring the offense within the act of 1819, under which the defendant is indicted, the State must prove not only that there once was, but that there was on the day the note in question bears date, such a bank as the note purports to be issued by, and that the note, if genuine, would be obligatory on said bank. These are questions of fact; but the evidence by which they are to be proven must first be judged of by the court, to see that it is competent and relevant. A fact may be proven two ways: first, by proof direct; secondly, not by proving the fact in controversy, but by proving some other fact from which such fact may be inferred. To give the utmost credit to the evidence in question, as to its direct effect, it only establishes, and that by way of recital and implication, that the Legislature of South Carolina, in the year 1800, passed an act incorporating the bank in question. But whether that act, by the terms of its limitation, continued up to the time this note bears date, or expired before; whether this is the form of these notes; whether they act in this, or any other particular, by a president, directors, and cashier, or by either of these *Page 227 
officers, or whether they have such, in no wise appears. They may act entirely in a different manner, and by different officers and organs; that they do act in making notes by a president and cashier is founded only in conjecture; because most banks have such officers and act by them, and use this form in making their notes. But conjecture is not the basis on which judicial proceedings rest. I say that these facts appear neither by direct proof nor by an inference warranted by law; and if so, the court should have put its hands upon it as irrelevant. I think it should also have been rejected because the very evidence itself shows upon its face that the party offering it has better evidence in his power or possession; for the production of a law (409) of an adjoining State, properly certified, is certainly within the power of the State; and the act produced by its recitals and references shows that there is such an act; in truth the contents of these very recitals and references, the State contends, prove the existence of the act in question. The act introduced is, therefore, secondary evidence as to such inferences, for it shows that, if the facts exist, the party has it in his power to produce the primary evidence showing their existence. This, therefore, is not a verdict contrary to the evidence, but a verdict without evidence. It is a mistake to say that judges may draw such inferences of fact as they think proper. They are bound by the law, and cannot make inferences which the law does not warrant any more than they can find against a legal presumption. They can no more infer that A. knows a fact because B., a stranger, knows it, than they can infer that when A., with a knowledge of what he was about, puts a pistol charged with a proper portion of gunpowder and an ounce ball to the breast of B., that A. did not intend to kill B.; for the law presumes the intent by using a weapon proper to effect it. But in the case first put, if A. is the wife of B., and the thing is of a family and domestic nature, and in the case last put, if the weapon is not of a deadly kind, and the question of intent is therefore less doubtful, so that there is not a legal presumption one way or the other, the question of inferring knowledge in the one case and of intent in the other is left to the jury as within their legitimate powers, which shows that a jury has not the arbitrary power of drawing inferences which the facts will not in law warrant. Whatever, therefore, may be the facts, I am satisfied that the evidence did not in law warrant the jury in saying that there was, on the day the forged note bears date, such a bank as it purports to be issued by, and that the note, if genuine, was obligatory on such bank; and, therefore, the evidence should not have been submitted to them.
PER CURIAM. New trial. *Page 228 
(410)